(No. 4821-)

FRED L. WALDEN, as Administrator of the Estate of JULIA WALDEN VALENTINE, Deceased, Claimant, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed March 18, 1963.*

*Petition of Claimant for Rehearing denied November 12, 1963.*

APPLEMAN, ZIMMERLY AND McKNELLY, Attorneys for Claimant.

WILLIAM G. CLARK, Attorney General; LEE D. MARTIN, Assistant Attorney General, for Respondent.

FEARER, J.

A complaint has been filed in this Court by Fred L. Walden, Administrator of the Estate of Julia Walden Valentine, deceased, for the wrongful death of Julia Walden Valentine.

The accident in question, resulting in the death of Julia Walden Valentine, occurred on May 18, 1957, at or about the hour of 4:00 A.M., when decedent was riding as a passenger in an automobile, owned and driven by Ames Chester, which automobile was being driven in a westerly direction on Illinois Highway No. 150. The accident occurred on a curve in said highway, immediately east of the Village of Ogden, Champaign County, Illinois. The highway in question ran in a generally easterly and westerly direction, being a two lane macadam highway with a dividing line down the center thereof, which separated traffic traveling in an easterly and westerly direction.

The visibility at the time of the accident was very poor. This was a dark, foggy morning.

Decedent, at the time of the occurrence in question, was riding in the back seat, and, from the evidence, was asleep at the time.

The owner and driver of the vehicle, Ames Chester, was also killed in the accident. The only survivor was Ira Valentine, who was riding in the front seat, and was also asleep at the time of the accident in question.

Claimant was appointed Administrator of the Estate of Julia Walden Valentine by the County Court of Champaign County, Illinois on June 24, 1957. At the time of

filing the complaint, he was the duly qualified Administrator of said Estate. Decedent left surviving her, as her only heirs at law, two sons, Ira Peyton Valentine, Jr., and Walden Valentine, and one daughter, Emily Dyer.

It is alleged that decedent, at all times, was in the exercise of due care and caution for her own safety; and, further, that the next of kin were in the exercise of due care and caution for the safety of decedent.

The acts of negligence, with which respondent is charged as being the proximate causes of the accident resulting in the death of Julia Walden Valentine, are as follows:

A. That said curve was negligently designed or planned so that it was not reasonably safe for public travel, and said defective design or plan was obviously and palpably dangerous;

B. That the existence of said sharp curve, the illusion of continuity of said highway, and the absence of adequate and well lighted warning devices were breaches of duty of employees of the State to maintain said right of way in a safe condition;

C. That said employees negligently failed to post sufficient signs or signalling devices indicating and warning of said curve, although said devices were reasonably necessary to make said right of way safe for public use;

D. That said employees negligently failed to properly construct and maintain said roadway at said point;

E. That said employees negligently failed to abate a known nuisance, consisting of a public right-of-way unsafe for use in the absence of adequate signs and warning devices;

F. That employees of the State responsible for the proper maintenance of said roadway negligently permitted said conditions to continue after actual and constructive notice of their existence;

G. That employees of the State were otherwise negligent in and about the performance of their duties to maintain said roadway at said point in a safe condition for use by the general public at any hour and under all weather conditions.

Ira Peyton Valentine, Jr., the only survivor in this accident, testified that they had been in Indianapolis attending an organ concert by the Youth Branch of the National Association of Negro Musicians of which decedent was National Youth Director; and, further, that she also was giving piano lessons, and was very active in many associations.

He further stated that they left Indianapolis at approximately 1:15 A.M., and that decedent had gone to sleep immediately after leaving Indianapolis, and she did not awaken before the accident. That he went to sleep at Fithian, Illinois, which is about five or six miles east of Ogden, where the accident occurred. The last he remembers was that the weather was foggy, there being intermittent fog, and it had been that way most of the way back, and the last speed he remembered of the car was about sixty miles per hour. The next thing he remembered was being awakened in the hospital, where he was questioned by the coroner.

He further testified concerning his mother's earnings, the associations and organizations that she belonged to, and her contribution to the support of her children.

On cross-examination, he testified that he and the driver of the car, before leaving Indianapolis, went to a bar, and each had two drinks. That other than stopping for gas, they made no other stops. That they started running into patches of fog thirty minutes out of Indianapolis, and there was intermittent fog all the way back.

That neither he nor his mother said anything to Mr. Chester about the way he was driving the automobile. That neither he nor Mr. Chester were intoxicated, and his mother did not know that they had had anything intoxicating to drink.

In addition to the allegation in the complaint as to other occurrences at this particular curve, which is paragraph 13 in the complaint, which, in our opinion, would not be a proper pleading, there was testimony offered by other witnesses for claimant as to previous accidents, which, of course, is not competent, unless it can be shown that all of the surrounding conditions were the same at the time of the other accidents as at the time of the occurrence in question, and that the conditions then existing were the proximate cause of the accident in question, resulting in the death of claimant's intestate. In order for this evidence to be competent, there would have to be a showing of prior accidents occurring at the same place and under similar circumstances. This would be for the purpose of showing that the unsafe thing or condition causing the accident was the condition or cause common to such independent accident, and that the frequency of such accidents tended to show respondent's knowledge of such a condition.

*Welter* vs. *Bowman Dairy Co.*, 318 Ill. App. 305 at 363
*Budek* vs. *City of Chicago*, 279 Ill. App. 410 at 422
*Gerrard* vs. *Porcheddu*, 243 Ill. App. 562 at 567

In the Departmental Report filed in this case, it appears that there were numerous signs, some of which were reflectorized, bearing the notation, ''SLOW 30 M.P.H.'' There were also signs characterizing the curve by an arrow. In fact, we can find nothing in the record wherein this curve was not properly marked as a warning to traffic traveling thereon.

This Court has held numerous times that the State of Illinois is not an insurer of all persons traveling upon its highways.

Grant vs. State of Illinois, 21 C.C.R., 563, 568
Stanley vs. State of Illinois, 22 C.C.R., 438 at page 440

In reading the transcript and in an examination of authorities, this Court is of the opinion that it is very apparent that the proximate cause of the accident, resulting in the death of Julia Walden Valentine, was the negligent operation of the car in which she was riding, which was being driven by Ames Chester. It appears from the testimony and from the record that, just prior to the time of reaching this curve, Ames Chester was driving this automobile at a fast and dangerous rate of speed, taking into consideration the weather, conditions and lack of visibility.

It is, therefore, the order of this Court that the claim of Fred L. Walden, as Administrator of the Estate of Julia Walden Valentine, be and the same is hereby denied.